UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

United States of America,

Plaintiff,

v.

Timothy James Durel,

Defendant.

No. 2:23-cr-00132-KJM

ORDER

In this case, in which defendant Timothy James Durel pled guilty to possession of child sexual abuse materials (CSAM), nine victims seek restitution. Defendant settled with five victims and has agreed to pay each the statutory mandatory minimum $3,000 restitution under 18 U.S.C. §§ 2259 and 3359. The remaining four victims seek more than the mandatory minimum $3,000 restitution, which defendant contests. For the following reasons, the court orders restitution in the amounts set forth below.

## I. BACKGROUND

On May 13, 2024, defendant pleaded guilty to Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2). Plea Agreement at 1, ECF No. 27. The government identified nine victims who appeared in the series defendant possessed and as part of his plea, defendant agreed to pay mandatory restitution to each victim of at least $3,000 and up to $15,000, as provided by 18 U.S.C. § 2259. *Id.* at 2–3; Gov't. Mem. at 1, ECF No. 47. On November 11, 2024, the court

sentenced defendant to sixty-three months' incarceration followed by sixty months of supervised release. Judgment & Commitment at 2–3, ECF No. 45. The parties submitted briefing on issues of law relevant to restitution. Def. Mem., ECF No. 46; Gov't. Mem.; Gov't Supp. Mem., ECF No. 53.[1] The court held a restitution hearing on February 18, 2025, at which Roger Yang appeared for the government and Robert Holley appeared for defendant, with defendant waiving his appearance. Mins. Restitution Hr'g, ECF No. 55. Because there is no dispute that the nine individuals are victims and therefore entitled to restitution under § 2259, the sole question presented at the hearing was the appropriateness of the proposed restitution amounts under the applicable statute and based on the record before the court.

## II. LEGAL STANDARD

Under the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, district courts "shall order restitution" paid to victims of certain federal criminal offenses, including possession of CSAM. 18 U.S.C. § 2259(a), (b)(2)(A). An earlier version of the restitution statute mandated courts award "the full amount of the victim's losses," including medical services, therapy, lost income, attorneys' fees, among other enumerated costs, and finally "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3) (2012).

In *Paroline v. United States*, the Supreme Court addressed the application of the earlier version of § 2259 and how lower courts should analyze and weigh the causal relationship between the crime and the victim's losses when ordering restitution in these kinds of cases. 572 U.S. 434 (2014). The Court explained that restitution amounts should be based on "the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 437. In highlighting a defendant's "relative role," the Court recognized a difference between those who originally abused and exploited victims, including by creating CSAM, and those who distributed or

---

[1] The government filed its supplemental restitution memorandum without prior authorization from the court. ECF No. 53. The court, nevertheless, considers the supplemental memorandum because defense counsel did not object and has had an opportunity to fully respond to the arguments the government makes there. Defendant is not prejudiced by the court's consideration of the memorandum.

possessed that CSAM at a later time. *Id.* at 460 (analyzing whether "the defendant had any connection to the initial production of the images"); *see also United States v. Galan*, 804 F.3d 1287, 1290 (9th Cir. 2015). Congress's 2018 amendments to § 2259 codified the "relative role" language from *Paroline* and added a requirement that courts impose a mandatory minimum amount of restitution. The current version of the statute thus mandates courts "determine the full amount of the victim's losses" incurred as a result of the covered crime and then "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b).

The primary task for the sentencing court, therefore, is to decide what amount of restitution reflects the "relative role" the defendant played in contributing to the victim's losses. 18 U.S.C. § 2259(b)(2)(B). The Ninth Circuit interprets "*Paroline* to require that the losses, including ongoing losses, caused by the original abuse of each victim . . . be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible." *United States v. Massa*, 647 F. App'x 718, 721 (9th Cir. 2016) (quoting *Galan*, 804 F.3d at 1291) (internal quotation marks omitted). At the same time, courts have recognized that "[e]ven mere possessors of child pornography cause proximate harm to victims of child pornography." *United States v. Jaycox*, No. 14-cr-10, 2019 WL 6341159, at *2 (E.D. Cal. Nov. 27, 2019) (quoting *United States v. Bordman*, 895 F.3d 1048, 1056 (8th Cir. 2018)). Proof that a defendant "viewed the images and videos is not required" in awarding restitution, and a court might find possession of many CSAM images of any single victim can justify a restitution award above the $3,000 minimum. *Id.* (internal quotations and citations omitted); 18 U.S.C. § 2259(2)(B); *see, e.g.*, *United States v. Anderson*, No. 2:20-cr-00195, 2024 WL 216566, at *3 (E.D. Cal. Jan. 19, 2024) (in case involving transportation of CSAM, explaining "$5,000 appropriately represents the harm Defendant's conduct caused [victim] based on the foregoing evidence and the substantial number of images he possessed from this series"). Courts have interpreted the Circuit's decision in *Galan* to call for considering various factors in calculating a victim's total loss, which can depend on "egregiousness of the original abuse; how a victim can (or does) cope with that kind of abuse when distribution of images does not follow; and the

particular victim's own reactions to the various traumas to which the victim has been subjected." *Anderson*, 2024 WL 216566, at *1.

Disputes about the proper amount of restitution must be resolved by the court through application of a preponderance of the evidence standard, and the government bears the burden of proving a victim's loss amount. 18 U.S.C.A. § 3664(e) (made applicable to § 2259 restitution actions by 18 U.S.C.A. § 2259(b)(2)); *see also United States v. Kennedy*, 643 F.3d 1251 (9th Cir. 2011) ("In carrying this [§ 2259] burden, we have held that the government must provide the court with enough evidence to allow the court to estimate the 'full amount of the victim's losses' with 'some reasonable certainty.'" (quoting *United States v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir. 2007)). Following the codification of *Paroline*, district courts maintain broad discretion in making restitution awards; the determination "cannot be a precise mathematical inquiry" but instead requires "sound judgment." 572 U.S. at 459; *Massa*, 647 F. App'x at 721 ("This was not a 'precise mathematical inquiry.'" (quoting *Paroline*, 572 U.S. at 459)); *United States v. Grovo*, 826 F.3d 1207, 1221 (9th Cir. 2016) ("Paroline adopted a flexible approach to causation . . . which gives district courts 'wide discretion' in fashioning restitution orders." (quoting *Paroline*, 572 U.S. at 462)).

## III. ANALYSIS

As noted, restitution counsel and defendant have agreed to restitution awards of $3,000 for each of five victims, identified here pseudonymously: Pia, Emily, Jenny, Patty and Jan_Socks1. At hearing, the government presented those amounts to the court and defense counsel confirmed the parties' agreements. The court approves those restitution awards.

Defendant contests the awards restitution counsel request for the remaining four victims, also identified by pseudonyms: $10,000 for Sarah, $7,500 for Cara, $5,000 for April, and $10,000 for Sloane with a no contact order as well. Defendant argues awards for these victims above the mandatory minimum of $3,000 are not supported under § 2259 because he "had absolutely no role in any causal process that underlies any of the victims' losses." Def. Mem. at 3–4. Defendant asserts he deleted photographs after downloading them and that there is no forensic evidence showing he ever actually viewed the photographs of these victims. *Id.* at 4. At hearing,

defense counsel asserted any amount over the mandatory minimum would improperly punish defendant for larger harms to which he contributed no part and otherwise go beyond the statute's aim of making victims whole. The defense is correct that, while receipt is undisputed, there is no forensic evidence in the record to show whether defendant opened or viewed any images after downloading them. It appears it is the government that could have proffered such evidence, but it has not.

Regarding defendant's "relative role" in the harms underlying the victims' total losses, defendant invokes the Supreme Court's reasoning in *Paroline*, which continues to have force following Congress's amendment of the restitution statute. *See* 572 U.S. at 458–62. In *Paroline*, the Court recognized the challenge of determining the "relative role" of a defendant. *Id.* ("But courts can only do their best to apply the statute."). At the same time, defendant's assertion that mere possession cannot support anything above the statutory minimum is at odds with applicable case law. *Cf. Jaycox*, 2019 WL 6341159, at *2. With the foregoing standards in mind, the court addresses each contested restitution award below.

**A. Sarah**

In her memorandum on behalf of Sarah, restitution counsel Carol Hepburn submits a thorough and well-documented request, and requests the court order restitution to Sarah in the amount of $10,000. Gov't Supp. Mem. at 2; Notice of Lodging Ex. D (Sarah Mem.) at 3, ECF No. 49 (sealed).[2] In its initial memorandum, the government recommended an award of $3,000 to Sarah "based on the relatively low number of images." Gov't Mem. at 6.

Defendant possessed fifteen files from the series including images of Sarah. *Id.* at 6. Ms. Hepburn submits evidence that Sarah suffers total losses of well over two million dollars. Sarah Mem. at 3. This amount includes a consideration of ongoing harm, likelihood of permanent

[2] When citing page numbers on filings bearing the pagination automatically generated by the CM/ECF system, the court uses the CM/ECF pagination. When citing exhibits lodged with the court and not bearing automatic pagination generated by the CM/ECF system, including restitution counsel's memoranda filed under seal, the court uses the internal pagination appearing on the cited document.

unemployment and attorneys' fees among other costs associated with the distribution of CSAM containing her images. *Id.* at 4–5.

Ms. Hepburn argues the award she requests is proper under *Paroline* because the amount "is properly disaggregated" from the original creation and trafficking of Sarah's images, defendant has a law degree and served as a deputy sheriff and was therefore a "trusted" member of his community. *Id.* at 8. Ms. Hepburn also asserts that certain "online news accounts" indicate defendant is a "repeat offender" who has "show[n] a pattern of apparently sexually motivated and predatory behavior." *Id.* Section 2259 and *Paroline* as codified focus on providing restitution for the "losses" suffered by a victim and making that victim whole for those losses. In calculating losses, this Circuit directs sentencing courts to consider additional factors including egregiousness of the original abuse and a victim's manner of coping and reaction to the trauma. *Anderson*, 2024 WL 216566 at *1 (citing *Galan*, 804 F.3d at 2191). Even assuming Ms. Hepburn's arguments regarding defendant's characteristics are correct,[3] the law does not support increasing a restitution award on these grounds. But as noted above, the number of images possessed by defendant can factor into the harm § 2259 restitution aims to address. A wider circulation of the CSAM involving a victim can lead to more suffered losses—and Sarah argues here the number of images, among other factors, increased her total losses.

Ms. Hepburn presents evidence the trauma Sarah has endured from past abuse continues to cause extensive psychological challenges for her. Given these challenges, Sarah did not finish high school and struggles to maintain meaningful employment. She suffers from a chronic illness, which she asserts is exacerbated by stress related to her abuse. These challenges require extensive therapy, and even with such therapeutic interventions, Sarah asserts she has and will lose substantial income over her lifetime. The total losses, ongoing harms and likelihood of permanent unemployment presented along with the strength of the record supports an upward greater than the $3,000 mandatory minimum. The court therefore orders restitution in the amount

[3] The court considered and addressed similar arguments about defendant's position in the community and characteristics at sentencing. *See* Mins. Sentencing Hr'g, ECF No. 44; Presentence Investigation Report at 4, 6, ECF No. 38 (sealed).

of $5,000. *Cf. Anderson*, 2024 WL 216566, at *2–3 (awarding $5,000 restitution award to victim with over two million dollars in losses and requiring extensive counseling).

**B. Cara**

Ms. Hepburn also represents Cara and asks the court to order restitution to Cara in the amount of $7,500. Gov't Supp. Mem. at 3. In its initial memorandum, the government recommended an award of $3,000. Gov't Mem. at 6–7.

Defendant possessed seven files from the known CSAM series involving Cara. Gov't Supp. Mem. at 3. Ms. Hepburn submits evidence that Cara has incurred total losses over $43,000. Notice of Lodging Ex. E (Cara Mem.) at 4, ECF No. 49 (sealed). These losses include "vocational and educational challenges" among other psychological challenges. *Id.* at 2. While Cara has been gainfully employed, Ms. Hepburn asserts she is "underemployed." *Id.* Ms. Hepburn also submits evidence about her attorneys' fees and costs without requesting a separate fees award. *Id.* at 2, 91–92; 18 U.S.C. § 2259(c)(2)(E) (full amount of the victim's losses includes "reasonable attorneys' fees, as well as other costs incurred").

Ms. Hepburn presents similar arguments on behalf of Cara as she does for Sarah, asserting the award requested reflects proper disaggregation, and defendant was a trusted community-member and "repeat offender." For the reasons set forth above, the court does not consider defendant's past employment or patterns of behavior in analyzing the requested restitution. The court does consider other relevant factors including that Cara's abuse led to a need for psychotherapy and assessment for psychotropic medication. Ms. Hepburn also asserts Cara has turned to self-medication to cope with the anxieties associated with the circulation of the CSAM involving her. While she received mental health treatment, she asserts it was of little benefit. When considering Cara's total losses and the record, while not in any way diminishing the harm Cara has suffered, the court cannot identify support for exceeding the statutory minimum amount of $3,000. The court orders restitution in the amount of $3,000.

**C. April**

In her memorandum on behalf of April, restitution counsel Susanna Southworth requests the court order restitution to April in the amount of $5,000. Notice of Lodging Ex. F (April

Mem.) at 5, ECF No. 49 (sealed). The government agrees with Ms. Southworth's request and recommends the court order the requested $5,000 restitution. Gov't Supp. Mem. at 3; Gov't Mem. at 7.

Defendant possessed 298 files from the known series involving April. Gov't Mem. at 7. Ms. Southworth submits evidence that April suffers total losses over $225,000. April Mem. at 5.

The government agrees with the requested restitution award "[g]iven the relatively high number of images." Gov't Mem. at 7. It contends the number of images suggests defendant "[went] out of his way to acquire more images of this particular victim." Gov't Supp. Mem. at 4 (citing *United States v. Monzel*, 930 F.3d 470, 481 (D.C. Cir. 2019)). As clarified at hearing, the government asks the court to draw this inference from the number of images alone. As noted above, no forensic evidence supports the assertion defendant searched for CSAM involving April and the number of images possessed alone cannot support this conclusion. Given the nature of electronic downloads of CSAM, the number of images possessed involving April could have been included in a bulk download of batched images. *Cf. United States v. Lynn*, 636 F.3d 1127, 1130 (9th Cir. 2011), *as amended on denial of reh'g and reh'g en banc* (May 31, 2011) (describing one method of mass downloading images involving CSAM). Restitution counsel presents no argument about the number of images possessed or how it should inform the court's analysis of the requested restitution award. Instead, Ms. Southworth relies on evidence of the ongoing harm April experiences, stemming from the continued distribution of CSAM involving images of her. April Mem. at 5–6. This continued distribution has led April to feel paranoid and alienated. She understands she will likely need lifelong mental health treatment to address her anxiety, panic attacks and other chronic mental health challenges. Ms. Southworth asserts the requested restitution will support April's treatment and she submits an itemized list of therapy costs and anticipated hours to support the request. *Id.*

Recognizing the severity of April's losses, without relying on the total number of images defendant possessed, the court finds the record supports an award to her above the statutory minimum. The court orders restitution in the amount her counsel requests, $5,000. *Cf. Anderson*,

2024 WL 216566, at *3–4 (awarding $5,000 restitution award to victim with projected losses between $286,000 and $323,000 and requiring extensive counseling).

**D. Sloane**

**1. Restitution**

Ms. Hepburn also represents Sloane and asks the court to order restitution to Sloane in the amount of $10,000. She also requests a no contact order. Notice of Lodging Ex. G (Sloane Mem.) at 5–7, ECF No. 49 (sealed); Gov't Supp. Mem. at 7. In its initial memorandum, the government recommended an award of $5,000 to Sloane, and made no recommendation about the requested no contact order. Gov't Mem. at 7.

Defendant possessed four files from the known CSAM series involving Sloane. Gov't Mem. at 7. Ms. Hepburn submits evidence that Sloane's losses total, at a minimum, between $1.2 and $1.5 million. Sloane Mem. at 1. The incurred losses include impediments to her professional advancement and severe psychological trauma. *Id.* at 3, 6–7. Ms. Hepburn also submits evidence about attorneys' fees and costs. *Id.* at 52. Despite her references to additional forthcoming information that could strengthen the reasons supporting Sloane's request, the court has not received any updated information. Sloane Mem. at 4–5.

Ms. Hepburn presents similar arguments on behalf of Sloane as she does for Sarah and Cara. The court here as well does not consider defendant's characteristics in analyzing the requested restitution. The court does consider other factors presented in Sloane's request, including the nature of the abuse Sloane endured, which included particularly egregious and violent abuse. Sloane endured the violent sexual abuse over a five-year period. The distributed CSAM is linked to the name "Tara" and the series has developed a "cult following." *Id.* at 2. Sloane's legal name among other identifying information, has been circulated online accompanying the CSAM. This distribution has led to continued unwanted contact from those who viewed the CSAM. Ms. Hepburn asserts Sloane now suffers from anxiety and panic attacks that can only be controlled by medication. Sloane's life is constricted by the knowledge that her CSAM images continue to circulate and her ability to advance professionally is particularly impeded by her trauma.

Considering the total amount of losses, the egregious nature of the abuse endured and Ms. Hepburn's detailed legal reasons in support of the restitution request, the court orders restitution in the amount of $5,000.

**2. No Contact Order**

In addition to the requested restitution award, Ms. Hepburn requests the court impose a no contact order ordering defendant to refrain from contacting Sloane. Ms. Hepburn requests a no contact order using the pseudonym "Tara," which is associated with the CSAM involving Sloane. The no contact order is necessary, Ms. Hepburn asserts, because Sloane and her family have endured repeated, direct contact from "child pornography 'enthusiasts.'" *Id.* at 5. At hearing, defense counsel asserted defendant has never had direct contact with any victim in the matter and imposing such an order is unnecessary and malicious.

The court notes the conditions of defendant's incarceration and the special conditions that will be applicable during a term of supervised release do not explicitly accomplish the same goals as a no contact order would. Judgment & Commitment at 4–5 (requiring defendant to notify certain at-risk individuals at the probation officer's request and prohibiting defendant from directly contacting anyone under the age of eighteen). Considering the history of unwanted and direct contact Sloane has experienced, and the availability of details regarding her identity on the internet, the court finds the request compelling and supported by the record. The court therefore grants the requested no contact order.

## IV. CONCLUSION

For the foregoing reasons, the court orders defendant pay restitution in a total amount of $33,000 to be distributed as follows:

1. $3,000 to Pia;
2. $3,000 to Emily;
3. $3,000 to Jenny;
4. $5,000 to Sarah;
5. $3,000 to Cara;
6. $5,000 to April;

7. $5,000 to Sloane;

8. $3,000 to Patty;

9. $3,000 to Jan_Socks1.

The restitution payments ordered above will terminate upon payment of the total costs incurred by any victim. 18 U.S.C. § 2259(b)(2)(C).

Additionally, defendant is ordered to not make contact in any way, electronically or otherwise, with the victim known as "Tara."

IT IS SO ORDERED.

DATED: March 6, 2025.

SENIOR UNITED STATES DISTRICT JUDGE